O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MANUEL MACHUCA,                 )      CASE NO. CV 10-06771 RZ
                                )
                    Plaintiff,  )
                                )      MEMORANDUM OPINION
        vs.                     )      AND ORDER
                                )
MICHAEL J. ASTRUE, Commissioner )
of Social Security,             )
                                )
                    Defendant.  )
                                )

        In challenging the Social Security Commissioner's finding that he is not disabled, Plaintiff asserts two errors.

        First, Plaintiff asserts that the Administrative Law Judge committed error by not fully crediting the opinion of Dr. Keyes, the eye doctor who treated Plaintiff as part of his Worker's Compensation claims. Plaintiff asserts that the Administrative Law Judge did not distinguish between vocabulary used in the Worker's Compensation context and that used in Social Security disability cases, and that, with a proper understanding of Dr. Keyes' reports, the residual functional capacity found by the Administrative Law Judge is not supported by the record. As indicated below, issues concerning Dr. Keyes' assessment require a remand in this case.

        Plaintiff has had retinal tears and vitreous hemorrhaging in his left eye. He had three laser surgeries to repair the tears. Dr. Keyes opined that the eye injuries were

1  caused by Plaintiff's exertion and, following the three surgeries, stated that Plaintiff should
2  not engage in heavy lifting or strenuous physical exertion.  "Simply put," Dr. Keyes stated,
3  "the patient should do only light or office work and, if such work is not available, he
4  should not work."  [AR 418]

5        Using the definitions of physical exertion under the Social Security
6  regulations, the Administrative Law Judge found that Plaintiff could perform medium
7  work, with certain other restrictions.  Insofar as Dr. Keyes was concerned, the
8  Administrative Law Judge stated that "some weight" was given to his opinion [AR 25], but
9  he did not explain what that meant; the Court can find no explanation of any way in which
10  the Administrative Law Judge thought that Dr. Keyes' opinion was deficient.  It is clear,
11  however, that the Administrative Law Judge was aware of the Worker's Compensation
12  complexities, and concerned by the fact that an agreed medical examination had not taken
13  place in those proceedings.  The Administrative Law Judge stated his concern with the
14  conclusions of Dr. Keyes as to the impact of weight and the retinal detachment.  [AR 67]
15  Evidently, that is why he subsequently sent Plaintiff to have a consultative examination
16  with Dr. Ullman.

17        The Administrative Law Judge had this to say about Dr. Ullman:
18
19        [B]ased upon his pathological findings, Dr. Ullman concluded
20        that the alleged level of vision was not consistent with the
21        degree of pathology present, as he would expect the claimant's
22        distance vision to be better in the left eye and reading vision to
23        be better in the right eye. [ ] Thus, the claimant's allegations
24        concerning the extent of functional limitation caused by his
25        status post retinal tear surgery are only partially credible in light
26        of the objective medical evidence.  Moreover, the claimant's
27        testimony establishes no contrary conclusion and neither he nor
28        his attorney Mr. Finkelberg objected to the ophthalmological

1    [sic] medical findings presented in Dr. Ullman's report (Ex.
2    12B).

3

4    [AR 22]   Again, it is difficult to understand the impact of Dr. Ullman's assessment.
5    Dr. Ullman measured Plaintiff's distance and near vision, and did, indeed, express surprise
6    that the distance vision was better in the right eye and the near vision better in the left eye,
7    rather than vice versa.  The Court assumes that Dr. Ullman meant that, given the surgeries
8    to the left eye, he would have expected the reverse of what he measured.  Dr. Ullman made
9    this comment in response to a question on the form which asked "Is alleged level of vision
10   consistent with degree of pathology?"  [AR 539]  There is no indication of what meaning
11   this question has in the context of this case.  Plaintiff was not alleging that his vision was
12   strong or weak; the issue instead is the effect of exertion on his eyes, given his history of
13   retinal tears and vitreous hemorrhaging.  On that issue, however, Dr. Ullman did not opine;
14   on the Social Security form asking him to assess Plaintiff's ability to lift or carry,
15   Dr. Ullman marked out the boxes and wrote in "NA."  [AR 557]  Thus, Dr. Ullman's view
16   of the pathology, and his surprise at Plaintiff's ability to see differently than he anticipated,
17   cannot be read as impeaching Dr. Keyes' assessment of the danger to Plaintiff from
18   working in a job that requires physical exertion.

19            Thus, the only real evidence as to the level of exertion that Plaintiff safely can
20   tolerate came from Dr. Keyes, opining in the context of the Worker's Compensation
21   proceedings.  Dr. Keyes, however, did not appear to be using Worker's Compensation
22   terminology in a technical sense.  Thus, when he used the term "light" in describing the
23   kind of work that Plaintiff could perform, or when he said that Plaintiff should be
24   precluded from "heavy" lifting, it does not sound as if he had a particular weight limitation
25   in mind.  His language is far more colloquial:  Plaintiff "should be precluded from working
26   at any job that includes heavy lifting *or* strenuous physical exertions.  *Simply put*, the
27   patient should do only light or office work and, if such work is not available, he should not
28   work."  [AR 418 (emphasis added)]

Thus, the Court cannot agree with Defendant's position here that the Administrative Law Judge's "RFC finding was consistent with Dr. Keyes' opinion" (Defendant's Memorandum at 4:1); the exertional limitations were, in fact, inconsistent with Dr. Keyes' assessment. The RFC provided that Plaintiff could exert 20 to 50 pounds of force occasionally [AR 20]; occasionally means up to one-third of the work-day. *See, e.g.*, AR 557. Lifting up to 50 pounds up to two and a half hours a day, five days a week, would not be consistent with the assessment made by Dr. Keyes that Plaintiff should not physically exert himself in his work. It is clear from context that Dr. Keyes thought that such exertion might cause a further tear to the retina and/or further vitreous bleeding. Under the circumstances, therefore, the record does not contain substantial evidence in support of the Administrative Law Judge's finding of Plaintiff's residual functional capacity. Therefore, as well, the ultimate finding of non-disability cannot be sustained.

As his second argument, Plaintiff asserts that the Administrative Law Judge erred in not fully crediting the opinion of Dr. Kunstat as to Plaintiff's mental impairment. Again, Plaintiff argues that the Administrative Law Judge failed to translate Worker's Compensation lingo into the realm of Social Security disability law. In this instance, however, any such failure was not important. The Administrative Law Judge was not required to give controlling weight to her opinion as to Plaintiff's capacity to work, and there were contrary opinions by consultants which raised doubts as to the force of that opinion. (However, the fact that one opinion was by a psychiatrist and Dr. Kunstat is a psychologist is not a basis for distinction, as there were no issues identified by the Administrative Law Judge with respect to medications, something that a psychiatrist, but not a psychologist, could administer, or any other basis for saying that a medical doctor was more expert than a doctor of psychology.) In addition, the Administrative Law Judge pointed out that Plaintiff himself thought that he could and should work, with vocational training. All these were sufficient reasons under the law for not fully relying on the opinion of Dr. Kunstat. *Morgan v. Apfel*, 169 F.3d 595, 602-03 (9th Cir. 1999); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In accordance with the foregoing, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings consistent with this memorandum.

IT IS SO ORDERED.


DATED:   October 6, 2011


_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE